UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| Y. G. HERNANDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:25-CV-093-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| FRANK BISIGNANO, *Commissioner of Social Security*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

The Commissioner of Social Security ("Commissioner") denied Plaintiff's application for supplemental security income, period of disability, and disability insurance benefits. Plaintiff seeks judicial review of the denial pursuant to 42 U.S.C. § 405(g). [R. 1]. Both Plaintiff, [R. 12], and the Commissioner, [R. 14], have filed their respective briefs, and Plaintiff has replied, [R. 15]. For the reasons that follow, the Court finds that the decision of the Administrative Law Judge ("ALJ") is both supported by substantial evidence and complies with the applicable regulations. The Court will therefore affirm the Commissioner's decision.

## I. BACKGROUND

Plaintiff is fifty-one years old and has a limited education, only completing up to the sixth grade. [R. 11 (Transcript of Administrative Record (hereinafter "Tr.")), pp. 36, 210].[1] At the time of the hearing, Plaintiff was employed full-time, yet she applied for supplemental security income,

[1] Page number citations refer to the Court Transcript Index included found in the administrative record as opposed to the ECF page number as there are sometimes disparities between the two.

disability benefits, and a period of disability for the 12 months which preceded her return to full-time employment. [R. 11, p. 36 (Tr.)].

Plaintiff protectively filed her application for disability insurance benefits and a period of disability under Titles II and XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3), on April 3 and 4, 2023 respectively. [R. 11, pp. 203–19 (Tr.)]. Therein, Plaintiff alleged she became disabled on September 15, 2022, due to "diverticulitis, diabetes mellitus [("Type 2 diabetes")], low vision, and hypertension." *Id.* at 241.

Plaintiff's applications were initially denied and were denied again upon reconsideration. *Id.* at 49, 55, 61, 69. At Plaintiff's request, ALJ Tommye Mangus held a hearing on February 2, 2024. *Id.* at 31. After considering the evidence presented by Plaintiff at the administrative hearing, ALJ Mangus rejected Plaintiff's applications on May 13, 2024. *Id.* at 14.

In making his determination, ALJ Mangus applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520; *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). In summary, the evaluation process proceeds as follows:

1. Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.
2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.
3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.
4. Does the claimant have the Residual Functional Capacity (hereinafter, "RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, ALJ Mangus found that although Plaintiff has engaged in substantial gainful activity since October of 2023, there was a continuous, twelve-month, period from September 15, 2022, to October 23, 2023, in which Plaintiff did not engage in substantial gainful activity. [R. 11, p. 20 (Tr.)].

Second, ALJ Mangus found that Plaintiff suffered from the medically determinable impairments of "diverticulitis status post partial colectomy and hernia repair; diabetes mellitus; hypertension and obesity, in addition to medically undeterminable anxiety." *Id.* However, ALJ Mangus determined that these impairments, either alone or in concert, did not meet the standard of a "severe impairment" as articulated by the applicable regulations. [R. 11, p. 20 (Tr.)]; *see* 20 C.F.R. § 404.1520(a)(4)(ii); *see also* 20 C.F.R. § 404.1509; see also 20 C.F.R. § 404.1522.

Plaintiff sought administrative review of the decision, and the Appeals Council declined review on March 24, 2025. *Id.* at 1. At that point, ALJ Mangus's decision became the final decision of the Commissioner, and Plaintiff sought judicial review from this court on May 22, 2025. [R. 1 (Complaint)].

## II. LEGAL STANDARD

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284,

286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *See also Anthony v. Astrue*, 266 Fed, Appx. 451, 456 (6th Cir. 2008).

## III. ANALYSIS

Plaintiff alleges that ALJ Mangus erred when finding that Plaintiff's diverticulitis was not a "severe impairment" under 20 C.F.R. § 404.1520(a)(4)(ii).[2] [R. 12, p. 12]. In step two of the traditional five-step analysis, the ALJ considers whether "an individual has a severe medically determinable physical or mental impairment or combination of impairments" that "affect(s) an individual's ability to perform basic work-related activities . . . ." SSR 16-3P, 2017 WL 5180304, at *11 (Oct. 25, 2017). A plaintiff can establish that impairment is severe if she shows "that it has lasted or is expected to last for a continuous period of at least twelve months and that [her] impairment has significantly limited [her] ability to do basic work activities." *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir.2012) (citing 20 C.F.R. §§ 404.1509, 404.1521, 416.909, 416.921) .

Step two of the traditional five-step analysis has been recognized as "*de minimis* hurdle," such that an impairment will not be "severe" "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience," *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x. 923, 929 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)); *see also Higgs*, 880 F.2d at 863 (noting that an impairment is non-severe when it is "'totally

[2] Plaintiff also alleges that her severe impairments include Obesity, Diabetes Mellitus, and Hypertension alongside her Diverticulitis, [R. 12, p. 2]. Plaintiff wholly failed to develop her arguments as to the ALJ's findings on these impairments, and the Court will not address them.

groundless' solely from a medical standpoint" (quoting *Farris v. Sec'y of Health and Hum. Serv.*, 773 F.2d 85, 90 n. 1 (6th Cir. 1985))), or if the impairment fails to "result in death, [or] last or be expected to last for a continuous period of [twelve]-months," 20 C.F.R. § 404.1509 (quotation modified); *see Harley*, 485 F. App'x at 804. In other words, a petitioner must prove that her impairment is both "severe" and lasts or lasted for a continuous, twelve-month period to move past step two of the sequential analysis. Although this is a low standard, Courts have upheld an ALJ's determination of disability based on a failure to satisfy the step two inquiry. *See Despins*, 257 F. App'x at 928; *see also Harley*, 485 F. App'x at 804; *see also Baker v. Berryhill*, 2017 WL 1424898, at 4 (E.D. Ky. Apr., 20, 2017).

With this standard in mind, the Court will address Plaintiff's challenges to the ALJ's severity findings. Specifically, Plaintiff argues that ALJ Mangus erred in making her determination insofar as she (1) disregarded the medical opinions of Dr. Gerrard and Dr. Khurana, state consulting physicians, and APRN Atkinson, Plaintiff's primary care provider, (2) disregarded Plaintiff's subjective symptoms, and (3) misstated Plaintiff's medical history and misrepresented medical evidence. [R. 12, pp. 10–12]; [R. 15, p. 3]. In response, the Commissioner asserts that ALJ Mangus's findings properly considered all relevant medical opinions as well as Plaintiff's subjective complaints insofar as they are consistent with the entire record, and further asserts that the ALJ's broader finding that Plaintiff was not "severely impaired" was supported by substantial evidence. [R. 14 pp. 6–9]. In reply, Plaintiff raises no new arguments and merely realleges that Plaintiff satisfied her burden under step two of the sequential evaluation. *See* [R. 15]. The Court will consider each of Plaintiff's arguments in turn.

**A. Medical Opinions**

As her first basis of error, Plaintiff alleges that ALJ Mangus erred when she failed to fully consider the medical opinions, and recommended limitations therein, of Dr. Gerrard, specialist in hospital medicine who examined Plaintiff in July of 2023, [R. 11, p. 560 (Ex. 9F) (Tr.)], Dr. Khurana, a neurology specialist who examined Plaintiff in August of 2023, *id.* at 68, 73 (Ex. 6A, Ex. 8A), and Advanced Practice Registered Nurse Atkinson ("APRN Atkinson"), who examined Plaintiff in December of 2023, *id.* at 576 (Ex. 11F). The Social Security Administration's regulations concerning the treatment of medical opinions state as follows:

> When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. **The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency**.

20 C.F.R. § 404.1520c(a) (emphasis added).

To fully comply with the applicable regulations, an administrative law judge must consider "supportability, consistency, relationship [with the claimant], specialization, and other factors" when determining the persuasive value of an opinion. 20 C.F.R. 404.1520c(c)(1)–(5). But the administrative law judge need only explain how he considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. 20 C.F.R. § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2). "To further illuminate this distinction, supportability relates to the objective medical evidence and supporting explanation provided by a

medical source to bolster their own opinion; by contrast, consistency relates to the relationship of a medical source's opinion to other medical opinions and evidence of record." *Marika G. v. O'Malley* (*Marika I*), No. 3:24-CV-00105-CRS-RSE, 2024 WL 5465207, at *4 (W.D. Ky. Dec. 20, 2024), report and recommendation adopted sub nom., *Marika G. v. King* (*Marika II*), No. 3:24-CV-105-CRS, 2025 WL 384416 (W.D. Ky. Feb. 4, 2025) (citing 20 C.F.R. § 416.920c(c)(1)–(2)).

**1. Opinion of Dr. Khurana**

Dr. Khurana, a state consulting physician and neurology specialist, examined Plaintiff in August of 2023, [R. 11, pp. 68, 75 (Tr.)], and determined that Plaintiff "is reasonably limited by the combined effects of the established impairments as indicated," *id.* at 67, 75. As Plaintiff points out in her brief, [R. 12, p. 11], Dr. Khurana determined that Plaintiff's diverticulitis and obesity were "severe," [R. 11, p. 72 (Tr.)]. Dr. Khurana also rendered an opinion of Plaintiff's functional limitations based on her severe impairments of obesity and diverticulitis:

> Careful attention has been given to claimant's statements regarding alleged symptoms and their effect on functioning. Claimant's MDIs could reasonably be expected to produce the alleged symptoms, but the statements concerning the intensity, persistence and limiting effects are partially consistent with the MER and suggest a greater level of severity than can be shown by objective medical evidence (see narrative summary).
>
> The alleged effect on function, including as noted in the adult function report, is somewhat greater than could be attributed given claimant's examination findings, and results of diagnostic investigation as noted in MER. The preponderance of the objective evidence does not fully support the alleged severity of symptoms and functional limitations such as being able to lift 10 pounds only, difficulty reaching etc.

*Id.* at 67 (Ex. 6A), 75 (Ex. 8A).

When considering Dr. Khurana's opinion and recommended limitations, ALJ Mangus assigned them no persuasive value, explaining:

> The electronic folder shows that a vast majority of medical evidence was submitted after the State agency's Reconsideration analysis in August 2023 (6A; 8A). As a

> result, the State's endorsement of limited light work, based on severe obesity and diverticulitis, cannot be adjudged persuasive because it is patently unsupported by developed medical record at hearing that clearly showed substantial resolution of intestinal problems within 12 months, as discussed as cited above in detail above. Moreover, the claimant lost a considerable amount of weight within the same 12 months following successful intestinal surgery, such that "stable" BMIs in the 30s do no reasonably correlate with a severe impairment in context of negative exams and physical aspects of daily activities.

*Id.* at 23.

When considering the consistency of Dr. Khurana's opinion, ALJ Mangus stated that "a vast majority of medical evidence"—namely, exhibits 2F, 3F, 5F, 6F, 8F, 10F, 11F, 12F, 13F, 14F, and 15F—was "submitted after the state agency's reconsideration in August of 2023." *Id.* at 23, 23 n.4. As relevant to Plaintiff's diverticulitis diagnosis, these exhibits contained all the objective medical evidence of Plaintiff's April 2023 surgery, *id.* at 22 (citing *id.* at 589 (Ex. 14F)), aimed at addressing and alleviating Plaintiff's diverticulitis, *id*. This post-surgery evidence showed that by the time of September 2023, a month after Dr. Khurana's examination, Plaintiff was "not having any concerns related to recovery." *Id.* at 594 (Ex. 14F).

Similarly, ALJ Mangus found that Dr. Khurana's opinion was unsupported by the medical evidence relied on in her examination, because the evidence available to Dr. Khurana lacked all the record evidence dated after Plaintiff's April hospitalization, *id.* at 66 (Ex. 6A), and contained no mention of Plaintiff's April surgery or subsequent developments, *id.* at 63 (Ex. 6A) (medical records considered by Dr. Khurana), 66 (Ex. 6A), meaning the evidence cited by Dr. Khurana was not relevant as to Plaintiff's impairment *at the time of examination* in August, three months post-surgery. Based on Dr. Khurana not having any records from between April and August, ALJ Mangus found her opinion "patently unsupported by developed medical record," that "clearly showed substantial resolution of intestinal problems within 12 months. . . ." *Id.* at 23. In other words, ALJ Mangus found the opinion and limitations of Dr. Khurana inconsistent and

unsupported because they were based on outdated information from before Plaintiff's surgery in April of 2023, and they thus did not reflect the substantial improvement in her symptoms thereafter. Therefore, ALJ Mangus did not err when assigning little persuasive value to the opinion of Dr. Khurana, which was inconsistent with the record and unsupported by updated evidence of Plaintiff's condition.

Plaintiff's argument that ALJ Mangus improperly dismissed the opinion of Dr. Khurana because "the ALJ cites no contrary medical opinion to rebut the state agency's findings of severe impairments," [R. 12 p. 12], is erroneous in the context of the case law, the applicable regulations, and the clear record. On applicable regulations, 20 C.F.R. § 404.1520c(c)(1)–(2), does not require an ALJ to provide a contrary medical opinion when assigning little to no persuasive value to a medical source or administrative finding. And, while an ALJ may consider contrary medical opinions when assigning persuasive value to a source, they are in no way mandated to provide a contrary source when finding a particular opinion unpersuasive; rather, they must simply articulate through the factors of supportability and consistency what value they assign to a particular opinion and why. 20 C.F.R. § 404.1520c(b)(2); *see also Bowman v. Comm'r of Soc. Sec.*, 683 F. App'x 367, 375 (6th Cir. 2017) (affirming a finding of no persuasive value to a medical source where no contrary opinion was cited); *see Anthony*, 266 F. App'x at 459 (affirming a finding of no persuasive value attributed to a medical source where there was no reference to a contrary source).

Having considered ALJ Mangus's analysis of Dr. Khurana's opinion, this court finds that ALJ Mangus complied with the regulations by discussing the factors of supportability and consistency and thoroughly considered the impact of the record evidence which was submitted subsequent to Dr. Khurana's examination. Accordingly, his decision to assign little persuasive

value to her evaluation aligns with applicable law and regulations and is supported by substantial evidence.

**2. Opinion of Dr. Gerrard**

Dr. Gerrard[3], a state consulting physician and hospital medicine specialist, examined Plaintiff in July of 2023, [R. 11, p. 560 (Ex. 9F) (Tr.)], and determined that Plaintiff suffered from "abdominal pain, nausea and diarrhea," *id.* at 561 (Ex. 9F) (Dr. Gerrard's "Review of Systems"), symptoms which were caused by diverticulitis, *id.* at 562 (Ex. 9F). Throughout her examination, Dr. Gerrard did not render an opinion on whether Plaintiff's diverticulitis was severe. *See generally id.* at 559–66 (Ex. 9F). Rather, Dr. Gerrard determined Plaintiff was functionally limited in the following ways:

> Based on the exam, patient should be able to sit. Patient should be able to stand for 60 minutes. Patient should be able to walk for 30 minutes on flat surface. Patient was able to get on and off the table without assistance or visible discomfort. No assistive device should be necessary. Patient should be able to lift and carry objects weighing approximately 5 pounds for 5 feet without difficulty. Patient should be capable of handling objects in both hands with good fine motor coordination. Patient is able to fasten buttons and use zippers. Range of motion of upper and lower extremities is normal, except as listed in attached sheet. Patient can hear and speak without difficulties. Patient demonstrates good judgment and coordination in avoiding hazards in the workplace and home. Patients seem to have normal ability to reason and make occupational, personal and social adjustments. Patient should be able to travel independently.

*Id.* at 562 (Ex. 9F).

ALJ Mangus, when articulating the persuasive value assigned to the opinion of Dr. Gerrard stated that:

> Other than reliance on specious subjective reporting, the July 2023 consultative examiner's endorsement of dramatically reduced sedentary work based on sole diagnosis of diverticulitis – to include, lifting and carrying 5 pounds for 5 feet and

[3] Plaintiff does not forward any specific argument as to the ALJ's assessment of Dr. Gerrard or APRN Atkinson's medical opinions, yet to ensure a complete record the Court will address the ALJ's evaluation of both medical opinions.

> walking 30 minutes on flat surfaces (9F) – is demonstratively unpersuasive because it is profoundly unsupported by categorically negative internal findings and similarly themed treatment records for alleged physical impairments other than diverticulitis, which substantially resolved within 12 months, as meticulously analyzed on an impairment-by-impairment basis above.

*Id.* at 24.

Upon review, this court finds that ALJ Mangus did not err when assigning little persuasive value to the recommended limitations of Dr. Gerrard, insofar as they relate to Plaintiff's diverticulitis. First, ALJ Mangus found that Dr. Gerrard's medical source statement was inconsistent with Plaintiff's medical treatment records because Dr. Gerrard recommended physical limitations that had no reasonable correlation to Plaintiff's diverticulitis. Rather, ALJ Mangus determined that the record evidenced such a significant symptomatic improvement of Plaintiff's diverticulitis, *see id.* at 589 (Ex. 14F), that the only source upon which Dr. Gerrard could have relied was Plaintiff's "specious subjective reporting." *Id.* at 24. Second, ALJ Mangus found Dr. Gerrard's opinion to be unsupported by her own internal findings because those findings were "categorically negative," *id.* at 22, such that the functional limitations could not reasonably be attributed to Dr. Gerrard's "sole diagnosis of diverticulitis," *id.* at 24. *See id.* at 562 (Ex. 9F) (Dr. Gerrard's report listing only "Diverticulitis" under "Diagnoses and Summary").

Having considered his thorough analysis of Dr. Gerrard's opinion, ALJ Mangus did not err in attributing little persuasive value to the opinion because he articulated that Dr. Gerrard's recommended limitations were unsupported by her own findings and inconsistent with Plaintiff's treatment history, one that showed a significant resolution of diverticulitis symptoms. In other words, it was not error for ALJ Mangus to find Dr. Gerrard's recommended limitations, which

were derived solely from Plaintiff's self-reported limitations, were unsupported by the sole diagnosis of diverticulitis.[4]

**3. Opinion of APRN Atkinson**

APRN Atkinson examined Plaintiff in December of 2023, [R. 11, p. 576 (Ex. 11F) (Tr.)], and determined that Plaintiff suffered from "Viral Gastroenteritis, DM2, Constipation, IBS-C, Lower Back Pain, Bil[ateral] Knee Pain, Nausea, Diverticulitis, Diarrhea, GERD, Fatigue, HTN, Candidiasis, Heartburn, H. Pylori (with recurrence), Sinusitis, Bronchitis," *id.* at 573 (Ex. 11F). The rest of APRN Atkinson's opinion consists of checkboxes or fill-in-the-blanks detailing Plaintiff's functional limitations, which summarily state that Plaintiff will be "off-task" fifteen percent of an eight-hour workday, Plaintiff may only concentrate for two hours before requiring a break, and Plaintiff will be absent from work for four days out of every month. *Id.* APRN Atkinson also determined that Plaintiff's abdominal pain is exacerbated by "pushing, pulling, [and] heavy lifting." *Id.* at 575 (Ex.11F).

In assigning no persuasive value to the opinion of APRN Atkinson, ALJ Mangus states:

> At times, treating family provider APRN Atkinson's physical functional statement seems entirely out of context in this case, as often there is no rational correlation between cited diagnoses and symptoms with the medical record (11F).
>
> * * *
>
> As to medically determinable impairments, Ms. Atkinson's statement, dated December 2023, appears completely uniformed with the claimant's history of effective recovery from intestinal surgery earlier in the year, and almost willfully ignorant of "well-controlled" diabetes and hypertension with conservative medication management *sans* cardiovascular, neuropathic, visual, or other complications.

---

[4] The court also notes that Dr. Gerrard's examination occurred in July of 2023, [R. 11, p. 561 (Ex. 9F) (Tr.)], around one month prior to Dr. Khurana's August examination, *id.* at 64, 78 (Ex. 6A, 8A). Therefore, ALJ Mangus's reasoning for assigning little persuasive value to Dr. Khurana, namely lack of access to post-surgery medical records, applies in equal measure to Dr. Gerrard and also supports his assignment of little persuasive value to her opinion. *See supra* Section III.A.2.

> Most obvious, Ms. Atkinson's statement is rendered entirely moot by her patient's return to full-time work two months earlier. Consequently, it is in no way, shape, or form persuasive because it is categorically unsupported by cursory citation to otherwise unexplained diagnoses and general symptoms, and is likewise inconsistent with the non-contributory treatment record, cited and discussed on an impairment-by-impairment basis above, as well as the consultative examiner's thoroughly negative clinical observations.

*Id.* at 24.

In other words, ALJ Mangus determined that APRN Atkinson's opinion was entirely inconsistent and unsupported by the record because her opinion was seemingly ignorant of Plaintiff's post-surgery treatment history, relied on diagnoses and symptoms which find no support in the record, and was entirely inconsistent with Plaintiff's return to full-time work. *Id.* at 24; *see also id.* at 21–22 (discussing Plaintiff's diverticulitis, surgery, and recovery).

ALJ Mangus first addresses the myriad of diagnoses in APRN Atkinson's opinion, and accurately states that they—and therefore APRN Atkinson's opinions—are unsupported by the record. *See id.* at 562 (Ex. 9F) (Dr, Gerrard's sole diagnosis of Diverticulitis in July); *see also id.* at 72 (Ex. 8A) (Dr. Khurana's August diagnoses of diverticulitis, obesity, diabetes mellitus, and anxiety). Next, ALJ Mangus refers to APRN Atkinson's seeming ignorance of Plaintiff's post-surgery symptomatic development which evidenced an alleviation if not elimination of abdominal pain. *See id.* at 594 (Ex. 14F) ("P[aiten]t is currently not having any concerns related to recovery, other than the constipation, with plan discussed below."). In contrast APRN Atkinson determined Plaintiff had extreme and persistent abdominal pain which was exasperated by "lifting, pulling, or pushing," *id.* at 574 (Ex. 11F), despite the objective medical evidence that showed Plaintiff's symptoms were alleviated after her April 2023 surgery, *see id.* at 589–94 (Ex. 14F).

Further, ALJ Mangus reasons that APRN Atkinson's opinion is entirely unsupported by Plaintiff's return to full-time work in October of 2023, *id.* at 36 (Transcript of Administrative

Hearing), insofar as she was aware that Plaintiff had resumed full-time work at the time of the December 2023 examination but still determined that Plaintiff was subject to significant functional limitations, *id.* at 573–76 (Ex. 11F). Notably, APRN Atkinson's opined that Plaintiff would be absent from full-time work 4 days a month, *id.* at 573, yet Plaintiff's hearing testimony which states "I missed *out of the three months I have been working*, I miss like at least *four or five times* already," *id.* at 40 (emphasis added), demonstrating a disconnect between APRN Atkinson's opined limitations and Plaintiff's actual limitations related to her diverticulitis. The Court also notes the inconsistency between APRN Atkinson's determination that Plaintiff suffers from "intermittent episodes of bowel distress," *id.* at 574 (Ex. 11F), and Plaintiff's report of "moderate constipation" at the September follow-up, with no mention of supposed "bowel distress," *id.* at 589 (Ex. 14F). Taken in concert, these inconsistencies render APRN Atkinson's functional limitations entirely inconsistent with the non-medical evidence present in the record.

Having considered ALJ Mangus's thorough analysis of APRN Atkinson's opinion, the Court finds that substantial evidence supports ALJ Mangus's finding that APRN Atkinson's opinion is unpersuasive. ALJ Mangus complied with the regulations by discussing both the consistency and supportability of APRN Atkinson's opinion, and she thoroughly considered the medical and non-medical evidence that contradicts APRN Atkinson's assessment of Plaintiff's diagnoses and symptoms. Moreover, it is worth noting that some of APRN Atkinson's proposed limitations come in the form of a "check-box analysis" with a few fill-in-the-blank questions, *see id.* at 573-76 (Ex. 11F), which administrative law judges may appropriately afford little weight. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (noting that reports, where the physician's only obligation is to check a box or fill in a blank, are generally weak evidence at best); *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016)

(recognizing that an ALJ can properly give check-box forms "little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence"). Upon examination, ALJ Mangus did not err in finding APRN Atkinson's opinion unpersuasive because she properly determined that it was both inconsistent with and unsupported by the medical and non-medical evidence in the record, [R. 11, p. 24 (Tr.)].

**B. Plaintiff's Subjective Symptoms**

Plaintiff's next allegation of error comes from her reply brief, in which Plaintiff alleges that ALJ Mangus failed to consider Plaintiff's subjective symptoms despite Plaintiff having "met the low burden of establishing a severe impairment at step two of the sequential process." [R. 15, p. 3]. Just as with Plaintiff's other claims of error, this court only assesses the ALJ's determination with respect to whether the ALJ applied the correct legal standards and whether his conclusions are supported by substantial evidence. *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir 2004); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007) ("In sum, while credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence.").

The legal standard for evaluating the creditability of a claimant's complaints of disabling pain is laid out by 20 C.F.R. § 404.1529, and the Sixth Circuit has further refined this standard into a two-part test. *See Rogers*, 486 F.3d at 249 (Citing 20 C.F.R. § 416.929(a)) The Sixth Circuit summarizes the test as follows:

> In assessing an individual's credibility, the ALJ must first determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged . . . . Next, the ALJ must evaluate the intensity, persistence, and functional limitations of the symptoms by considering objective medical evidence, as well as other factors . . . ."

*Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 542 (6th Cir. 2014) (citing 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3)).

This test first demands that the ALJ ask whether the claimant has a medically determinable impairment which can reasonably be expected to produce such symptoms. *Rogers*, 486 F.3d at 249. Then, the ALJ must evaluate the "intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities" by examining the objective medical evidence and non-medical evidence in the record. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 788 (6th Cir. 2009). In examining the record, the ALJ may not make creditability determinations "based solely upon an 'intangible or intuitive notion about an individual's credibility,'" *White*, 312 F. App'x at 788 (quoting *Rogers*, 486 F.3d at 247), or a selective view of the record which fails to take all the relevant evidence into account, *see Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 259 (6th Cir. 2015) ("Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints 'based on a consideration of the entire case record.'" (quoting *Rogers*, 486 F.3d at 247)).

From the record, it is clear that ALJ Mangus followed this legal standard faithfully, first by finding that Plaintiff suffered from the medically determinable impairment of diverticulitis which could be reasonably expected to produce the symptoms alleged, [R. 11, pp. 20–21 (Tr.)], and only then determining that the "intensity, persistence, and limiting effects are not entirely consistent" based on an analysis of the entire record, *id.* at 21. In support of his determination, ALJ Mangus cited Plaintiff's post-surgery follow-up appointments in May 2023, *id.* at 22 (citing *id.* at 596 (Ex. 14F)), and September 2023, *id.* (citing *id.* at 589 (Ex. 14F)), as well as her return to full-time work in October of 2023, *id.* (citing *id.* at 36 (Administrative Hearing Transcript)). *See id.* at

601(Ex. 14F) ("Patient currently reports no symptoms"). ALJ Mangus reasoned that this evidence rendered Plaintiff's subjective complaints inconsistent with the medical and non-medical evidence in the record. *Id.* at 21–22. Specifically, ALJ Mangus determined that Plaintiff's subjective reporting in the May and September follow-ups, in which she reported "doing very well," *id.* at 596, and only "moderate constipation," *id.* at 589, undermined her subjective complaints of experiencing "pain every single day," *id.* at 39 and requiring "frequent bathroom breaks at work," *id.* at 22; *see also id.* at 39–40. Further, ALJ Mangus found that Plaintiff's return to full-time work in October "underscored" her effective recovery following surgery, *id.* at 22, and that Plaintiff's acknowledgement of "no 'write ups' or other disciplinary measures by supervisors," *id.*; *see also id.* at 40–41, contradicted Plaintiff's allegations of "continuously disabling symptoms," *id.* at 22.

When making a creditability determination for a claimant who alleges disabling pain, an ALJ must support their determination with substantial record evidence that is consistent with the entire record. *See Rogers*, 486 F.3d at 248 ("[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and weight of the relevant evidence."); *see also White*, 312 F. App'x at 788 ("'[T]he ALJ is not free to make credibility determinations based solely upon an intangible or intuitive notion about an individual's credibility.'" (quoting *Rogers*, 486 F.3d at 247)). ALJ Mangus met that standard because he referenced record evidence of Plaintiff's post-surgery symptomatic improvements, [R. 11, p. 22 (citing *id.* at 589 (Ex. 14F))], and record evidence illustrating Plaintiff's return to work despite allegedly disabling symptoms, *id.* at 22. *See Rogers*, 286 F.3d at 248 ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect."). This evidence is consistent with the record as a whole

because, apart from medical opinions ALJ Mangus found unpersuasive, *see supra* Section III, the record demonstrated a consistent trend of symptomatic improvement that undermined the creditability of Plaintiff's complaints of continually disabling symptoms.

In sum, when ALJ Mangus found that Plaintiff lacked creditability, he followed the proper legal standard under 20 C.F.R. § 404.1529 because he first determined that impairment was objectively present and could reasonably be expected to cause the symptoms alleged, and only then determined that the intensity and persistence of Plaintiff's symptoms were not corroborated by the objective medical and non-medical evidence. [R. 11, pp. 21–22]. As ALJ Mangus cited substantial evidence that is consistent with the entire record, *see Rogers*, 286 F.3d at 247, and made a reasonable evaluation of Plaintiff's creditability based on that substantial evidence, *see id.* at 249 ("[W]hile credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence."), this Court finds that ALJ Mangus did not err in determining that Plaintiff's subjective complaints were not credible.

**C. ALJ Mangus's Factual Misstatements**

In her last objection, Plaintiff correctly points out that ALJ Mangus erroneously stated Plaintiff received surgery after her second hospitalization for diverticulitis. [R. 11, p. 21]. This statement directly conflicts with the administrative record, which details that Plaintiff was hospitalized twice in January of 2023, *id.* at 337, 353, 440, twice again in February of 2023, *id.* at 424, 541, and for a fifth time in April of 2023, *id.* at 544. This factual error is undisputed by the parties. *See* [R. 14 p. 5, n.1]. The Court will thus analyze whether this factual misstatement constitutes harmful error in this case.

Where an ALJ commits factual errors, the Sixth Circuit has instructed that when "'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of

agency action into a ping-pong game.'" *Kobetic*, 114 F. App'x at 173 (quoting *NLRB v. Wyman-Gordon Co*., 394 U.S. 759, 766 (1969)). Therefore, unless Plaintiff demonstrates that ALJ Mangus's misstatement would change the result upon remand, the error is harmless. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

In this case, ALJ Mangus's misstatement did not harm Plaintiff because the erroneous statement was not considered or relied upon as evidence in the ALJ's findings. ALJ Mangus reached their her conclusion based almost exclusively on Plaintiff's return to full-time employment and post-surgery medical records, reflecting near complete resolution of her diverticulitis sometime between May 2023 and the first week of September 2023. [R. 11, pp. 21–23 (citing *id.* at 589, 591, 593, 595 (Ex. 14F) (Tr.)]; *see also id.* at 20 (citing *id.* at 236 (Ex. 8D) (showing Plaintiff's return to full-time work). Because nothing in Plaintiff's hospitalization records prior to the April surgery change or contradict ALJ Mangus's finding of significant symptomatic improvement post-surgery between May 2023 and early September 2023, her misstatement constitutes harmless error in this case. *See Kobetic*, 114 F. App'x at 173.

Plaintiff also alleges that ALJ Mangus erroneously stated that "[a]t the last scheduled follow-up in September 2023, the claimant described only 'some moderate constipation.'" [R. 11, p. 22 (Tr.)]. The record shows that Plaintiff reported abdominal pain and intermittent nausea at the September follow-up, *id.* at 589 (Ex. 14F), but the record further reveals that examining physician Dr. Avinash Bhakta attributed Plaintiff's abdominal pain and intermittent nausea to a diagnosis of H. Pylori, not diverticulitis, *id.* at 589, 594 (Ex. 14F). Specifically, Dr. Bhakta's September 7, 2023, examination contains two separate paragraphs in the "history of present illness" section. *See id.* at 588–602. The first paragraph discusses Plaintiff's diverticulitis, for which "moderate constipation" and "intermittent fecal urgency" are the only noted symptoms. *Id.* at 589. The second

paragraph discusses Plaintiff's recent diagnosis of H. Pylori, to which her nausea and abdominal pain is attributed. *Id.* Plaintiff's brief argues that these latter symptoms speak to the severity of Plaintiff's diverticulitis, [R. 12, pp. 10-1], yet later in the examination under "assessment and plan" Dr. Bhakta attributes Plaintiff's constipation and fecal urgency to diverticulitis, while her nausea and abdominal pain is attributed to H. Pylori, stating:

> P[atien]t is *currently not having any concerns related to recovery, other than the constipation,* with plan discussed below. P[atien]t has been tolerating regular diet overall, with the exception of the H. Pylori that is currently being followed by her PCP. At this time, the patient has met all goals of recovery and can follow up in the clinic on an as needed basis.

[R. 11, p. 594 (Tr.) (emphasis added)].

ALJ Mangus reasonably omitted these symptoms from his evaluation, as they pertain to H. Pylori—an ailment that is not at issue in Plaintiff's applications and thus is irrelevant to the ALJ's determination of whether Plaintiff's *diverticulitis* is "severe." ALJ Mangus committed no factual error, but instead purposely omitted symptoms irrelevant to his evaluation of Plaintiff's diverticulitis.

The Sixth Circuit has found that "[s]o long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements . . . ." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012*); see also Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. Nov. 22, 2022) ("Even for a medical opinion, there is no requirement to cite to every piece of evidence or conclusion . . . ."). In other words, the ALJ must merely "provide an accurate and logical bridge between the evidence and the conclusion." *Logsdon v. Kijakazi*, No. 1:20-CV-00177-GNS, 2022 WL 812416, at *5 (W.D. Ky. Mar. 16, 2022) (quotation omitted). Therefore, despite the fact that ALJ Mangus failed to explicitly state that she omitted the pain and nausea detailed in the September examination, *see* [R. 11, p. 22

(ALJ Mangus discussing the September examination) (Tr.)], the record allows this court to follow the ALJ's reasoning to understand that her omission was intentional, especially since it related to the diagnosis of H. Pylori.

Taken together, although the court agrees that ALJ Mangus misstated Plaintiff's recent medical history and omitted the complaints of nausea and abdominal pain from her determination, these errors and omissions did not influence ALJ Mangus's broader severity determination, and therefore do not constitute harmful error and do not warrant remand. *See Ulman*, 693 F.3d at 714; *see also Kobetic*, 114 F. App'x at 173.

**D. Severity Determination**

The Court finds each of Plaintiff's alleged errors in ALJ Mangus's determination unpersuasive; neither ALJ Mangus's assignment of little persuasive value to various medical opinions, nor his evaluation of Plaintiff's creditability, nor his factual error and intentional omission, applied an erroneous legal standard or were unsupported by substantial evidence. The ALJ properly found that Plaintiff did not have an impairment or combination of impairments that had significantly limited (or was expected to significantly limit) her ability to perform basic work-related activities for twelve consecutive months, and accordingly, she did not have a "severe" impairment or combination of impairments. [R. 11, p. 20 (Tr.)].

Specifically, ALJ Mangus found that the medical evidence and Plaintiff's subjective symptoms did not support sustained symptoms or limitations between her alleged onset date of September 15, 2022, [R. 11, p. 241 (Tr.)], and the following twelve months consistently. As mentioned, records following her April 2023 surgery, starting in May 2023, revealed the success of surgery and lack of significant residual intestinal issues. Id. at 601(Ex. 14F) ("Patient currently reports no symptoms"). Her last scheduled follow-up during the first week of September 2023

similarly confirmed that the surgery was a success. Id. at 594 (Ex. 14F) ("P[atien]t is currently not having any concerns . . . ."). This, in combination with her return to full-time work in October 2023, reflects that substantial evidence supports the ALJ's finding that Plaintiff's diverticulitis was not severe, or at the very least failed to be severe for the twelve-month durational requirement. In sum, Plaintiff failed in meeting her burden to prove that her medical impairments significantly limited her ability to perform basic work activities for the requisite twelve-month durational period. *See Despins,* 257 F. App'x at 930 ("The mere existence of those impairments, however, does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time).

Therefore, upon an independent examination of the record, the Court finds that ALJ Mangus's determination that Plaintiff's impairments were not "severe" as defined by 20 C.F.R. § 404.1520(a)(4)(ii), *see also* 20 C.F.R. § 404.1522, is supported by substantial evidence. Plaintiff's symptomatic improvement following the April surgery, *see* [R. 11, p. 22 (citing *id.* at 589, 591 593, 595)], and her return to full-time work in October of 2023, *see id.*; *see also id.* at 36, rise well above the "more than a scintilla of evidence" required by our standard of review, as "it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Cutlip*, 25 F.3d at 286.

As a closing note, an ALJ's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir.1993). While there might be evidence in the record that could support conclusions contrary to those reached by ALJ Mangus, it is clear that ALJ Mangus thoroughly considered all evidence of record, and the Court finds no error in her decision.

## IV. CONCLUSION

For the above-stated reasons, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable law and regulations. **IT IS HEREBY ORDERED** as follows:

1. The final decision of the Commissioner is **AFFIRMED**.
2. A separate Judgment will be entered consistent with this Order.

This the 25th day of August, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY